# In The
# United States Court Of Appeals
# For The Seventh Circuit

---

## CASE NO: 13-3673

---

# UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

# TODD JONES,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Central District of Illinois,
Case No No. 1:07-cr-10023-MMM-JAG-1,
The Honorable Michael M. Mihm, Presiding

---

**BRIEF AND REQUIRED SHORT APPENDIX
OF THE APPELLANT, TODD JONES
ORAL ARGUMENT REQUESTED**

---

**Murray Kamionski
HALE LAW LLC
53 W. Jackson Boulevard
Suite 334
Chicago, IL 60604
818-609-1795**

*Counsel for Appellant*

# DISCLOSURE STATEMENT

1.      The full name of every party that the attorney represent in this case:
TODD JONES

2.       The names of all law firms whose partners or associates have appeared
for the party in the case or are expected to appear for the party in this court
(N/A)

3.      The party is not amicus or a corporation

# TABLE OF CONTENTS

DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.    THE CONDITIONAL LIBERTY ENJOYED BY A PERSON ON PAROLE OR PROBATION IS NOT A MATTER OF "GRACE" WHICH CAN BE REVOKED AT THE WHIM OF THE STATE .... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    II.    THE SERIOUSNESS OF THE LOSS OF A MAN'S FREEDOM, FUNDAMENTAL CONCEPTS OF FAIRNESS, AND BASIC PENOLOGICAL GOALS OF REHABILITATION ALL REQUIRE THE APPLICATION OF DUE PROCESS BEFORE THE REVOCATION OF PROBATION AND PAROLE.. . . . . . . 12

    III.    TRIAL COURT VIOLATED APPELLANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHTS BY FAILING TO CONSIDER ALTERNATIVES TO INCARCERATION. . . . . . . . . 13

        A.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        B.    Discussion of the Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.    UNDER THE TOTALITY OF THE CIRCUMSTANCES IN THIS CASE, APPELLANT'S 4 MONTH SENTENCE-AFTER-REVOCATION WITH AN ADDITIONAL 3 YEARS PROBATION IS PLAINLY UNREASONABLE.. . . . . . 19

      A.    7th Circuit Standard Of Review. . . . . . . . . . . . . . . . . . . . . . . 19

      B.    U.S. Supreme Court Standard of Review.. . . . . . . . . . . . . . 20

      C.    The Record Fails to Show Meaningful Consideration of the U.S.S.G Policy Statements and the Statutory Sentencing Factors.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      D.    The Court Failed to Adequately Justify the Significantly Above  Sentence Imposed Including Prison Term and Excessive Probation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION AND RELIEF SOUGHT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

REQUIRED SHORT APPENDIX

    Judgment of 12/03/13

    Transcript of 11/26/13

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

Abel v. Wyrick,
    574 S.W. 2d 411 (Mo. en banc 1978). . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Atkins v. Marshall,
    533 F. Supp. 1324 (S.D. Ohio 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Boddie v. Connecticut,
    401 U.S. 371 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Commonwealth v. Vasquez,
    389 A. 2d, 111 (Pa. Super. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Escoe v. Zerbst,
    295 U.S. 490 (1935). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Gagnon v. Scarpelli,
    411 U.S. 778 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

Gall v. United States,
    552 U.S. 38, ___ (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 20, 22

Goldberg v. Kelly,
    397 U.S. 254 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

Greene v. McElroy,
    360 U.S. 474 (1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hannah v. Larche,
    363 U.S. 420 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Lawrence v. Smith,
    451 F. Supp. 179 (W.D. N.Y. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Mempa v. Rhay,
    3S9 U.S. 128 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Morrissey v. Brewer,
    408 U.S. 471 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Murray v. Page,
    429 F.2d 1359 (10th Cir. 1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Romano v. Black,
    735 F.2d 319 (8th Circuit 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

Sherbert v. Verner,
    374 U.S. 398 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Slochower v. Board of Higher Education,
    350 U.S. 551 (1956). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Speiser v. Randall,
    357 U.S. 513 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Bolds,
    511 F.3d 568 (6th Cir., 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Booker,
    543 U.S. 220 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Carter,
    408 F.3d 852 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Kizeart,
    505 F.3d 672 (7th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

United States v. Neal,
    512 F.3d 427 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Pitre,
    504 F.3d 657 (7th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

United States v. Reed,
    573 F. 2d 1020 (8th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**STATUTES AND CONSTITUTIONAL PROVISIONS**

U.S. Constitution, Amendment XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 13

18 U.S.C. § 323. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3145(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 23, 24, 25

18 U.S.C. § 3582(c) (2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3742(a) (4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18 U.S.C. § 3742(b) (4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**RULES AND GUIDELINES**

U.S.S.G. Ch.7 policy statements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

USSG § 5C1.1(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

USSG § 5C1.1(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

USSG § 7B1.3(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

USSG § 7B1.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## <u>JURISDICTIONAL STATEMENT</u>

1. The jurisdiction of the United States District Court for the Central District of
   Illinois is founded upon Title 18 U.S.C. § 323. The jurisdiction of the Unites
   States Court of Appeals for the Seventh Circuit is founded upon Title 28
   U.S.C. § 1291 and Title 18 U.S.C. § 3145(c) and is based on the following
   particulars:

   a. Date of entry of judgment sought to be reviewed: judgment order
      entered November 26, 2013, adjudicating defendant guilty of violation
      of the terms of supervised release, 1D. Law Violation: Possession of
      Cannabis and 2A and B. Standard Condition Number 2: Failure to
      report to the U.S. Probation Office and Failure to submit monthly
      supervision report forms for the months of April, May, June, and July,
      2013, and committing defendant to the custody of the Bureau of
      Prisons for a term of 4 months, allowing self--surrender, and imposing
      a 36 month supervised release term.(Doc # 94 – Judgment, APX.
      pp.1-4; Transcript of November 26, 2013, APX. pp. 5-29.).

   b. Filing date of notice of appeal was November 26, 2013 ( Doc #90-
      Notice of Appeal.)

## ISSUES PRESENTED FOR REVIEW

1.Did the trial Court violate Appellant's Fourteenth Amendment Due Process rights by failing to consider alternatives to incarceration?

2.Was the four month *additional* sentence after revocation which Appellant received, that included an *additional three year probation*, plainly unreasonable in light of the fact that Appellant had already been on probation for some 41 months, there were no unusable circumstances justifying Appellant's imprisonment, and where the Sentencing Guidelines themselves reflected that the violations alleged were relatively minor- one positive or two positive drops over a period of time?

## STATEMENT OF THE CASE

On February 22, 2007, Appellant Todd Jones was indicted on four counts that included Count 1, and three other counts that dealt with distribution of cocaine base as well as possession of cocaine base with intent to distribute.  (Doc #1 – Indictment).

On July 12, 2007, Appellant entered into a Plea Agreement pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure, wherein Appellant pled guilt to Count 1 of the Indictment. (Doc #19-Plea Agreement.)

On January 18, 2008 Appellant received a sentence of 57 months imprisonment and 5 years supervised release with special conditions: 1) no use of

alcohol or drugs and participate in substance abuse testing and treatment as directed; 2) no firearms, ammunition, or dangerous weapons; and 3) participate in job training or employment counseling as directed by probation officer. (Doc # 40 .)

On July 23, 2008, Appellant filed an Amended Motion to Reduce Sentence. (Doc #59.)  On July 24, 2008, Appellant's sentence was reduced to 46 months. (Doc #60.)

On August 19, 2013, the United States Probation Office filed a Petition for Warrant or Summons for Offender Under Supervision. (Doc # 81, APX. pp.30-33.)

On November 17, 2013,  a Violation Memorandum was issued which gave the Court the option of sentencing Appellant as part of a revocation proceedings to a sentence of imprisonment that included  a term of supervised release, with a condition that substitutes community confinement or home detention according to the schedule in USSG § 5C1.1(e) for any portion of the minimum term. USSG § 7B1.3(c)(1). (Doc # 88, Violation Memorandum.)

Appellant's supervision was revoked on November 26, 2013 in open court, and he was sentenced to four months of incarceration with an *additional three years of supervised probation*. (Doc # 94 – Judgment, APX. pp.1-4; Transcript of November 26, 2013, APX. p. 24.)

On November 26, 2013, Appellant, Todd Jones, appealed to the United States Court of Appeals for the Seventh Circuit the conviction and sentence in open court on November 26, 2013.  (Doc #90.)

The facts relevant to the issues submitted for review are as follows: From June 2010 through December 2012, the Appellant resided with Ashley Matchum in Moline, Illinois. Their first residence together was a two bedroom apartment in a large apartment complex. (Doc #88, Violation Memorandum, p.2.)   The second residence was a unit in a side by side duplex in Silvis, Illinois. (Id.) Appellant and Ms. Matchum have a daughter together that resided with them, as well as Ms. Matchum's son from a prior relationship. (Id.) On December 27, 2012 Appellant was advised by the US Probation Office that he needed to find a new residence. (Id.) Appellant immediately moved to Galesburg, Illinois, and took residence with LaKeeta Bailey.(Id.) On January 9, 2012, the Appellant  advised the US Probation Office that he needed to move again, as Ms. Bailey did not want her address registered as Appellant's  residence with the U.S. Probation Office. (Id.)  On January 9, 2012, Appellant moved to the home of Ruby Turner, in Galesburg, Illinois. Ms. Turner is Appellant's godmother. On August 14, 2013, Appellant reported to the U.S. Probation Office to meet with Officer Walsh. Appellant advised that he was homeless in April and May 2013 and did not report this to Officer Walsh because he did not want Officer Walsh to "ride him" about not

4

having a place to stay and also believed Officer Walsh would direct him to stay at the Galesburg Rescue Mission, which offender Jones did not want to do. (Doc #88, Violation Memorandum, p.2.) Since August 2013, Appellant has maintained a personal apartment at 509 Broad Street, #1, Galesburg, Illinois. (Id.)

Appellant has largely been unemployed while on supervised release. (Id.) Despite no official employment, Appellant  Jones has always reported earning some income from cutting hair and mowing lawns. (Id.)

In July 2012, U.S. Probation Officer Walsh worked with Appellant Jones to prepare cash receipts and invoices to track this income. (Id.)  From July 2012 through March 2013, Appellant Jones submitted self-employment income verification that ranged from $400 to $800 per month from lawn service and haircutting. Appellant has verbally reported employment during this period, but it is not verified. (Id.)

On July 27, 2010, Appellant Jones participated in a diagnostic assessment and evaluation for substance abuse treatment at Riverside, Rock Island, Illinois. (Id, at p. 3). Appellant Jones was not diagnosed with any substance abuse or dependence conditions. He was diagnosed with an adjustment disorder related to his reintegration to the community from prison. No treatment was recommended at that time. (Id.)

Appellant Jones submitted to drug testing on 53 occasions, 51 tests being negative and two tests being positive. *Thus, during his probationary status, Appellant Jones tested negative for 96% of the time.* (Doc #88, Violation Memorandum, p.3.)

On January 19, 2011, a Request for Modifying the Conditions or Term of Supervision with Consent of the Offender was filed to report that Appellant committed the offenses of driving while his license was suspended and obstructing a peace officer. Special Conditions No. 4 and 5 were added. Special Condition No. 4 required the offender to complete 25 community services hours. Special Condition No. 5 required the offender to complete a cognitive behavioral therapy program. (Id.)

On May 31, 2011, Appellant Jones completed his community service hours at the Moline, Illinois, YMCA. On July 25, 2011, offender Jones completed Cognitive Behavioral Therapy through the Family Counseling and Psychology Center in Rock Island. (Id.)

On November 12, 2013, a Violation Report requesting no action was submitted to the Court. (Id.) The Violation Report advised the Court of the criminal conduct described as Violations 1A and 1B of the instant Petition for action. (Id.) The report advised the Court that Appellant Jones was going through the state court process and recommended waiting for a disposition in those cases

prior to taking action against offender Jones' term of supervised release. (Doc #88, Violation Memorandum, p.3.)  The Court concurred with the recommendation, but directed that offender Jones needs to be returned before the Court for those violations at some point.(Id.)

On October 4, 2013, Appellant Jones was released to bond pending his revocation hearing. At the time of the hearing, Appellant was 6 weeks removed from having undergone neurosurgery on his back and was in need of continued physical therapy. (Id.) There was no opposition to his release to obtain needed medical treatment. (Id.) Since his release, offender Jones has resided alone at 509 Broad Street, Galesburg, Illinois. (Id.) Since his release there have been no known violations of his conditions of release. (Id.)

As alleged in the Petition for Warrant or Summons for Offender Under Supervision, on or about August 14, 2013, Appellant Jones possessed and used marijuana as determined by non-instrumented testing technology. On that date, a urine specimen provided by the offender tested positive for Tetrahydrocannabinol (THC). The urine was collected at the United States Probation Office, Rock Island, by U.S. Probation Officer Kerry Walsh and sent to Alere Laboratories, Gretna, Louisiana, for verification of the result. On August 18, 2013, Alere verified the presence of THC metabolite in the specimen. (Id. at p. 4.)

In addition, as alleged in the Petition, by May 5, June 5, July 5, and August 5, 2013, Appellant Jones failed to submit monthly supervision report forms for the months of April, May, June, and July, 2013, respectively.

The report forms *were* submitted on August 14, 2013. Appellant Jones advised that he did not submit forms as directed for those months, because he lacked a permanent address and did not want to deal with his probation officer "riding him" to find someplace to live. He further advised that he feared his probation officer would direct him to reside in a homeless shelter, which he did not want to do. (Doc #88, Violation Memorandum, p 4.)

The Violation Memorandum indicated under Minimum Term of Imprisonment Information that " Where the minimum term of imprisonment determined under USSG § 7B1.4 (Term of Imprisonment) is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in USSG § 5C1.1(e) for any portion of the minimum term. USSG § 7B1.3(c)(1)." (Id. at p. 6.)

Accordingly the court here was granted option of an alternative sentence to incarceration, which it refused to implement.

# SUMMARY OF ARGUMENT

Under the circumstances in this case, a prison sentence of four months,  with an *additional 3 years of supervised probation*, was plainly unreasonable. There were no unusual circumstances justifying a maximum imprisonment sentence of four months with an additional three years of supervised probation. This was especially egregious,  since Appellant had already served some 41 moths on supervised release and had just one year and a half left on his probation.

The court did not take this in to consideration and chose *not* to implement the recommendation of the probation officer, granting Appellant an alternative sentence to incarceration. This was in direct violation directly afforded to him by the Due Process Clause of the Fourteenth Amendment.

## **ARGUMENTS**

### I. THE CONDITIONAL LIBERTY ENJOYED BY A PERSON ON PAROLE OR PROBATION IS NOT A MATTER OF "GRACE" WHICH CAN BE REVOKED AT THE WHIM OF THE STATE

It has traditionally been said that parole and probation are privileges bestowed as an act of grace by the State and can therefore be withdrawn at will, without the need for procedural due process. Escoe v. Zerbst, 295 U.S. 490 (1935).

However, the United States Supreme Court has rejected the theory that characterization of an interest as a "privilege" rather than a "right" justifies summary termination without due process of law.

In Goldberg v. Kelly, 397 U.S. 254 (1970), the United States Supreme Court held that welfare recipients must be given a hearing before their benefits could be terminated.

Goldberg v. Kelly is only one of a long line of Supreme Court cases which recognize that wherever freedom or security is threatened, due process protections must be accorded, whether the impending loss is characterized as a "privilege" or a "right". Thus, those facing discharge from employment, Greene v. McElroy, 360 U.S. 474 (1959); Slochower v. Board of Higher Education, 350 U.S. 551 (1956), or those brought before investigating committees, Hannah v. Larche, 363 U.S. 420

10

(1960), are entitled to an adequate notice of charges and a hearing on those charges.

Cases which have applied the Goldberg rule, which weighs the seriousness of the threatened loss against the inconvenience to the State of applying due process, have found that the loss of a variety of benefits, all of which may be said to be less significant than imprisonment, are  sufficiently grievous to require hearings. These include garnishment of wages, loss of a driver's license, loss of the ability to purchase liquor, expulsion from school, expulsion from public housing, and termination of water. See also, Sherbert v. Verner, 374 U.S. 398 (1963); Speiser v. Randall, 357 U.S. 513 (1958).

To lose one's freedom and be returned to prison for a number of years is assuredly to "suffer a grievous loss," and the interest in avoiding that loss of freedom certainly "outweighs the governmental interest in summary adjudication." Goldberg v. Kelly, supra, 397 U.S. at 263.

In balancing the inconvenience and cost to the state against the possible wrongful loss of an individual's freedom, for many years, the result is clear. Parole and probation revocation represent such drastic curtailments of freedom that due process standards must be applied. As the  Supreme Court wrote in Boddie v. Connecticut, 401 U.S. 371, 377-378 (1971):

> Early in our jurisprudence, this Court voiced the doctrine that '[w]herever one is assailed in his person  or his property, there he may defend.' The

11

theme that 'due process of law signifies a right to be heard in one's defense' has continually recurred ... Although '[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause,' ... there can be no doubt that at a minimum they require that deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the case [citations omitted].

## II. THE SERIOUSNESS OF THE LOSS OF A MAN'S FREEDOM, FUNDAMENTAL CONCEPTS OF FAIRNESS, AND BASIC PENOLOGICAL GOALS OF REHABILITATION ALL REQUIRE THE APPLICATION OF DUE PROCESS BEFORE THE REVOCATION OF PROBATION AND PAROLE.

An overwhelming number of State and Federal courts, relying primarily upon Goldberg v. Kelly, 397 U.S. 254 (1970) and Mempa v. Rhay, 3S9 U.S. 128 (1967), have come to recognize that the deprivation of freedom suffered by a person whose probation or parole is revoked is such a grievous loss that due process standards must be applied to the proceedings.

As the Tenth Circuit Court of Appeals said in Murray v. Page, 429 F.2d 1359, 1361-62 (10th Cir. 1970):

> The interest of the individual parolee is obviously very great. He has been found guilty of a crime, deemed worthy of rehabilitation and consequently given the privilege of parole. Parole revocation therefore terminates a valued, if conditional, liberty; personal freedom--whether classified as a grace, privilege or as constructive custody--has been unalterably rescinded. Therefore while a prisoner does not have a constitutional right to parole, once paroled he cannot be deprived of his freedom by means inconsistent with due process. The minimal right of the parolee to be informed of the charges and the nature of the evidence against him and to appear and be heard at the revocation hearing is inviolate. Statutory deprivation of this right is manifestly inconsistent with due process and is unconstitutional. The

12

judicial position that due process requires a hearing upon the revocation of probation or parole is supported by virtually all those who have studied the area. The Task Force on Corrections of the President's Commission on Law Enforcement and the Administration of Justice declared:

### III. TRIAL COURT VIOLATED APPELLANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHTS BY FAILING TO CONSIDER ALTERNATIVES TO INCARCERATION

**A. Standard of Review**

The U.S. Supreme Court held in <u>Gall v. U.S.</u>, 552 U.S. 38, ___ (2007), that "courts of appeals must review **all** sentences . . . under a deferential abuse-of-discretion standard." [emphasis supplied].

**B. Legal Argument**

Federal and state courts have uniformly held that the fourteenth amendment due process clause requires trial courts to consider alternatives to incarceration before revoking probation.

In <u>Gagnon v. Scarpelli</u>, 411 U.S. 778 (1973), the United States Supreme Court enunciated the minimum due process standards which a state must meet if it wishes to revoke an individual's probation. These standards comprise the "process" due to all probationers by guaranteeing that the state does not arbitrarily revoke a probationer's significant liberty interest.

<u>Gagnon</u> recognized that a court must make two fundamental determinations in deciding whether to revoke an individual's probation: (1) whether the probation terms were actually violated; and (2) if the terms of the probation were violated, "[s]hould the parolee (or probationer) be recommitted to prison or should other

13

steps be taken to protect society and improve chances of rehabilitation?" <u>Gagnon</u>, 411 U.S. at 784, citing <u>Morrissey v. Brewer</u>, 408 U.S. 471, 479-80 (1972).11

In exploring the rationale for requiring a trial judge to consider alternatives to incarceration, <u>Gagnon</u> identified various competing interests:

Both the probationer or parolee and the State have interests in the accurate findings of fact and the informed use of discretion -- the probationer or parolee to insure that his liberty is not unjustifiably taken away, and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community. 411 U.S. at 785. The Court also emphasized that rehabilitation, not punishment, is the focus of the probation/parole system.

The whole thrust of the probation/parole system is to keep men in the community, working with adjustment problems there, and using revocation only as a last resort when treatment has failed or is about to fail. Id.  Probation should be revoked *only* when the trial court is convinced that the probation violator's conduct is so bad that he or she "cannot be counted on to avoid anti-social activity." <u>Morrissey</u>, 408 U.S. at 479. A court must, therefore, find "*significant* violations of the conditions of probation" before revoking an individual's probation. <u>Gagnon</u>, 411 U.S. at 784, n.8. (emphasis added.)

Gagnon and Morrissey also require the trial judge to consider alternatives to incarceration on the record, so that the appellate court can meaningfully review the trial court's ruling. Thus, the trial judge must provide "a written statement . . . as to the evidence relied on and reasons for revoking (probation or parole)." Gagnon, 411 U.S. at 486, citing Morrissey, 408 U.S. at 489 (emphasis added).

In Romano v. Black, 735 F.2d 319 (8th Circuit 1984), the Eighth Circuit applied the teachings of Gagnon when it held that the trial court abused its discretion and violated Romano's due process rights by failing to consider alternatives to incarceration before revoking Romano's probation. Romano, 735 F.2d at 321-24.

In Romano, the record supported the Eighth Circuit's ruling for three reasons. First, the transcript revealed that the trial judge never considered alternatives to incarceration. Romano, 735 F.2d at 323; Romano, 567 F. Supp. at 884, 886. Second, the record reflected the trial judge's disposition to revoke Romano's probation for *any* probation violation. Id. (emphasis added.) Third, Romano's alleged probation violation -- a traffic accident that resulted in a $100.00 fine for careless driving -- had no rational relationship to Romano's underlying marijuana conviction. Moreover, as the district court observed, "the actions leading to the revocation would only have resulted in minor punishment had the defendant not been on probation." Romano, 567 F. Supp. at 887. The Eighth Circuit,

therefore, had little difficulty in finding that the trial judge abused his discretion in revoking Romano's probation and sending him to jail for twenty years.

Numerous federal and state courts which have considered the constitutional standards for probation revocation proceedings have followed the Morrissey/Gagnon requirement that a court must consider alternatives to incarceration and other mitigating evidence before revoking probation or parole. Examples include the following : United States v. Reed, 573 F. 2d 1020, 1024-25 (8th Cir. 1978) (before revoking probation, the court must consider whether violations are sufficiently serious to justify revocation and whether alternatives to incarceration would be more appropriate); Atkins v. Marshall, 533 F. Supp. 1324, 1329 (S.D. Ohio 1982) (in expressing its reasons for revoking probation, the trial court must consider whether reincarceration would best improve the probationer's hopes of rehabilitation); Lawrence v. Smith, 451 F. Supp. 179, 189 (W.D. N.Y. 1978) (parole board must explain its reasons for revoking parole rather than taking alternative action); Abel v. Wyrick, 574 S.W. 2d 411 (Mo. en banc 1978) (abuse of discretion as a matter of law for a court to revoke probation without considering alternatives to incarceration, especially when probation violation is technical and unrelated to underlying conviction); Commonwealth v. Vasquez, 389 A. 2d, 111, 113-14 (Pa. Super. 1978) (reversing trial court's order revoking probation and

parole as it made no specific finding that, inter alia, probation-parole violation
deserved imprisonment rather than alternative rehabilitative procedures).

Here, the trial court abused its discretion and violated Jones's due process
rights by failing to consider alternatives to incarceration before revoking Jones's
probation.

The transcript reveals clearly that the court never considered alternatives to
incarceration. Defense counsel pointed out to the Court that the "guidelines reflect
that these were relatively minor violations- one positive drop or two positive drops
over a period of time." (Transcript of November 26, 2013, APX. p. 20.)

Defense counsel made a very strong plea for home confinement to the Court,
which the Court decided to *not* address. (Id. at APX. p. 21.) :

Judge, what we're requesting is --- and I know you can order this because

he's in the zone where it would be appropriate for home confinement. I think

home confinement in this situation would be appropriate because there is

now a stable residence that he has that he could be confined to. Electronic

monitoring could be put in place, and he can continue to look for a job and

he could continue to look for a job and participate in physical rehabilitation.

To order him in to  jail or to prison at this  point, Your Honor, would really

defeat the purpose, which is to have stable housing, to get on the right track,

and to be able to comply with all the  conditions which he  has been doing

17

since he was released on bond. So, that's our request, Your Honor, that a

sentence --- whatever sentence you impose be a sentence of home

confinement. " (Transcript of November 26, 2013, APX. pp.21-22.)

The sentencing guidelines  §5C1.1 (c) (2) reads as follows -

(c)     If the applicable guideline range is in Zone B of the Sentencing Table, the minimum term may be satisfied by --

(2)     a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one month is satisfied by imprisonment; or

Here, the Court classified the applicable guideline range applicable to

Appellant to be  a Grade B violation, criminal History Category I. (Id. at APX. p.

16).  Hence under §5C1.1  (2), the court certainly *had* discretion to sentence

Appellant to supervised release with community confinement or home detention.

This the Court decided not to do.

Here, the record is crystal clear that the court *never* considered alternatives

to incarceration. Romano,735 F.2d at 323; Romano, 567 F. Supp. at 884, 886. As a

mater of fact, the record  actually reflects the Court's disposition to revoke

Appellant's probation for *any* probation violation. Id. (emphasis added.)

"Well the Court adopts the factual findings and guideline application as

contained in the presentence report. It looks to me from reading this that we did not

have the defendant's full attention, especially after he got his welding degree. And

then going for months without filing a report indicates again, I think *what his attitude is here* …" (Transcript of November 26, 2013, APX. 22-23, emphasis added).

Here, Appellant's alleged probation violation, possessing and using marijuana, in addition to a failure to submit monthly report forms, had no rational relationship to Appellant's underlying original offense for conspiracy to distribute cocaine base. As a matter of fact, these alleged probation violations e.g. one  or two drops of marijuana,  and failing to submit to monthly reports, would only have resulted in minor punishment had Appellant not been on probation. They certainly did not justify full incarceration in addition to an additional 36 months of supervised release while on probation, especially since Appellant had already been on probation for some 41 months already.


**IV.  UNDER THE TOTALITY OF THE CIRCUMSTANCES IN THIS CASE, APPELLANT'S 4 MONTH SENTENCE-AFTER-REVOCATION WITH AN ADDITIONAL 3 YEARS PROBATION IS PLAINLY UNREASONABLE.**

A. **7th Circuit Standard Of Review**

In the 7th Circuit the standard of review for a sentence after revocation has always been whether the sentence is "plainly unreasonable." <u>U.S. v. Kizeart</u>, 505 F.3d 672 (7th Cir. 2007). The <u>Kizeart</u> court reaffirmed the continued application of that standard even after the U.S. Supreme Court held, in <u>U.S. v. Booker</u>, 543 U.S.

220, (2005), that the appropriate standard of review for advisory Guideline

sentences is "reasonableness." However, while reaffirming the "plainly

unreasonable" standard for review of revocation sentences, the <u>Kizeart</u> court

acknowledged that in reality, the difference between the post-Booker

"reasonableness" standard and the "plainly unreasonable" standard is slight or even

nil. <u>Kizeart v. U.S.</u> at 682. Most other courts have also determined that there is

little, if any, practical difference between the two standards. [1]

## B.   U.S. Supreme Court Standard of Review

Although the U.S. Supreme Court has not specifically addressed the narrow

question of the standard of review for revocation sentences, it did hold, in <u>Gall v.</u>

---

[1] In <u>U.S. v. Bolds</u>, 511 F.3d 568, 573-581 (6th Cir., 2007), the Court undertook an
exhaustive review of how other courts have resolved the question of which
standard governs post-Booker review of sentences imposed upon revocation of
supervised release. Based on that review, the Court concluded that "five different
approaches have emerged," id. at 574, but "as a practical matter, there is only a
two-way circuit split between those circuits applying the 'plainly unreasonable'
standard of review (Fourth, Seventh) and those applying 'unreasonableness' review
(Second, Third, Eighth, Ninth, Tenth, Eleventh), with two circuits undecided
(Sixth, Fifth), and two which have yet to confront the issue (First, D.C.)." Id. at
582, ftn. 2. Based on its review of the other circuits and the U.S. Supreme Court's
decisions in Booker and Gall, the Sixth Circuit concluded that although Booker
"did not technically displace the 'plainly unreasonable' standard contained in 18
U.S.C. secs. 3742(a)(4) and 3742(b)(4), there is no practical difference between
Booker's 'unreasonableness' review and the 'plainly unreasonable' standard in
secs. 3742(a)(4) and 3742(b)(4)." Consequently, the Sixth Circuit adopted the
abuse of discretion standard. <u>Bolds</u> at 575.

U.S., 552 U.S. 38  (2007), that "courts of appeals must review all sentences . . .

under a deferential abuse-of-discretion standard." [emphasis supplied].

**C.  The Record Fails to Show Meaningful Consideration of the U.S.S.G Policy Statements and the Statutory Sentencing Factors**

In reviewing a sentence after revocation, the appellate court must determine

whether the sentencing court gave appropriate weight to the U.S.S.G. Ch.7 policy

statements and sufficiently considered the applicable sentencing factors in18

U.S.C. sec. 3553. U.S. v. Neal, 512 F.3d 427, 438 (7th Cir. 2008); U.S. v. Pitre,

504 F.3d 657, 664 (7th Cir. 2007); U.S. v. Carter, 408 F.3d 852, 854 (7th Cir.

2005). The reviewing court must then determine whether, under the totality of

circumstances, the sentencing court exercised its sentencing discretion soundly.

This requires the court to evaluate the sentence for both procedural and the

substantive soundness. In other words,

> [the appellate court] must first ensure that the district court committed no
> significant procedural error, such as failing to calculate (or improperly
> calculating) the Guidelines range, treating the Guidelines as mandatory,
> failing to consider the sec. 3553(a) factors, selecting a sentence based on
> clearly erroneous facts, or failing to adequately explain the chosen sentence -
> including an explanation for any deviation from the Guidelines range.
> Assuming that the district court's sentencing decision is procedurally sound,
> the appellate court should then consider the substantive reasonableness of the
> sentence imposed under an abuse-of-discretion ["plainly unreasonable" in
> the 7th Cir.] standard. When conducting this review, the court will, of
> course, take into account the totality of the circumstances, including the
> extent of any variance from the Guidelines range. *Gall, supra* at 597.

This review procedure applies whether the sentence is reviewed under an abuse-of-discretion or "reasonableness" standard, or under a "plainly unreasonable" standard. The only real difference between the competing standards is the degree of deference to be given to the district court decision.

In *Gall* the Supreme Court opined :

> As we explained in *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 168, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See 551 U.S., at 347 – 348, 127 S.Ct. 2456. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.[2] In so doing, he may not presume that the Guidelines

---

[2] Section 3553(a) lists seven factors that a sentencing court must consider. The first factor is a broad command to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The second factor requires the consideration of the general purposes of sentencing, including:
"the need for the sentence imposed—
"(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
"(B) to afford adequate deterrence to criminal conduct;
"(C) to protect the public from further crimes of the defendant; and
"(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2).
The third factor pertains to "the kinds of sentences available," § 3553(a)(3); the fourth to the Sentencing Guidelines; the fifth to any relevant policy statement issued by the Sentencing Commission; the sixth to "the need to avoid unwarranted sentence disparities," § 3553(a)(6); and the seventh to "the need to provide restitution to any victim," § 3553(a)(7). Preceding this list is a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the

range is reasonable. See id., at 351, 127 S.Ct. 2456. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. Ibid., 127 S.Ct. 2456.”

### D. The Court Failed to Adequately Justify the Significantly Above Sentence Imposed Including Prison Term and Excessive Probation

Here, the court revoked Appellant's supervised release and sentenced

Appellant to an *additional three years probation* contrary to due process as

required by 3553(a).

The defense gave compelling reasons as to why Appellant's sentence

should be low. Defense counsel expounded:

Appellant *does* have a place to live now. I would note that since he's been released on bond, there have been no violations. There were also a couple of things going on in Mr. Jones' life. One is a serious back injury for which he required surgery.  He is still in the process of recovering from that. (Transcript of November 26, 2013, APX. p. 20, emphasis added.)

But some of the things that he's done are good. He *did* complete a welding program; he *[did]* graduate from that program. He went in for an evaluation; he *was not diagnosed* with any substance abuse or dependency conditions…(Id., emphasis added)

---

purposes" of sentencing described in the second factor. § 3553(a) (2000 ed., Supp. V). The fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.

There has been a rough start. There have been problems. Any violation of supervised release is serious, but in this situation, I think the guidelines reflect that these are *relatively minor* violations- failure tofile reports , one positive drop or two positive drops over a period of time . He's been on supervised release for many months. *Forty one months*, so I would ask you to take that in to consideration as well, Your Honor. (Transcript of November 26, 2013, APX. pp. 20-21, emphasis added.) (Id., emphasis added.)

The fact is now Mr. Jones has an apartment of his own. He's recovering from his back surgery. And he hopes to find a job. He has the tools to do that because he has the certificate from welding as well as other certificates. The problem is some of the jobs that he's qualified for because of that certificate are going to require heavy lifting that he cannot do with the back injury. So, he's been looking for jobs that he can do and submitting drops whenever he is asked to do so. (Id. at APX. p. 21)

Judge , what we are requesting is --- and I know you can order this because not only is it a violation petition because also because he's on the zone where it would be appropriate for home confinement. I think home confinement in this situation would be appropriate because there is a now a stable residence that he has that he could be confined to. Electronic monitoring can be put in place, and he can continue to look for a job and participate in physical rehabilitation. (Id.)

To order him in to jail or to prison at this point, Your Honor, would really defeat the purpose, which is to have stable housing, to get on the right track, and to be able to comply with all the conditions of supervision which he has been doing since he was released on bond.( Id. at APX. pp. 21-22.)

So, that's our request , Your Honor, that a sentence—whatever sentence you impose be a sentence of home confinement for that period. (Id. at APX. p. 22.)

The government while requesting a sentence of imprisonment, was willing to agree to home confinement as well. (Id.)

Here, the Court when pronouncing its sentence, did not apply the seven factors listed in Section 3553(a) that a sentencing court must consider. It did not give any rational justification for the sentence imposed. These were very minor violations, if they were violations at all. The sentence imposed did not provide just punishment for the offenses alleged, do not afford adequate deterrence to criminal conduct, does not protect the public from further crimes of the defendant and most certainly does not provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner. § 3553(a)(2).

## CONCLUSION AND RELIEF SOUGHT

Appellant received a sentence in violation of his due process rights by the Court's failing to consider alternatives to incarceration. Accordingly, under the under the totality of the circumstances in this case, Appellant's 4 month sentence-after-revocation with an additional 3 years probation is plainly unreasonable. This error requires remand for re-sentencing.

Wherefore, Defendant Appellant Todd Jones, for reasons set forth above, respectfully requests that this Honorable Court vacate the judgment of sentence entered below, correct the sentence on review, or remand this matter for re-sentencing based on a determination on appeal that the sentence imposed deprived Appellant of his substantial rights to due process of law.

Respectfully submitted,

s/ Murray Kamionski_____
Murray Kamionski
HALE LAW LLC
53 W. Jackson Boulevard
Suite 334
Chicago, IL 60604
818-609-1795

*Counsel for Appellant*

## <u>CERTIFICATE OF SERVICE AND FILING</u>

In compliance with FRAP Rule 25 I hereby certify that on this 10th day of April, 2014, I electronically filed with the Clerk's Office of the United States Court of Appeals for the Seventh Circuit this Brief of the Appellant, and further certify that opposing counsel will be notified of this filing through the Notice of Docket Activity generated by this electronic filing.

Respectfully submitted,

s/ <u>Murray Kamionski</u>_____
Murray Kamionski
Hale Law LLC
53 W. Jackson Boulevard
Suite 334
Chicago, IL 60604
818-609-1795
*Counsel for Appellant*

<u>COUNSEL SERVED</u>:

Greggory R. Walters, Attorney
OFFICE OF THE UNITED STATES ATTORNEY
Suite 400
211 Fulton Street
One Technology Plaza
Peoria, IL 61602-0000

*Counsel for Appellee*

CASE NO: 13-3673

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE,
V.
TODD JONES,
DEFENDANT-APPELLANT.

# REQUIRED SHORT APPENDIX OF THE APPELLANT, TODD JONES

## TABLE OF CONTENTS

Entry Item                                                          Appendix Page #s

Docket # 94, Judgment of 12/03/13. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1-4

Transcript of 11/26/13, Revocation Hearing. . . . . . . . . . . . . . . . . . . . . . . . . .  5-29
      Testimony of Appellant/Defendant, Todd Jones. . . . . . . . . . . . . . . . . .  7-14

Docket # 81, Petition for Warrant or Summons of  08/23/13. . . . . . . . . . . .  30-33

## CERTIFICATION

I, Murray Kamionski, certify that to the best of my knowledge this appendix does in fact include all the materials required by Circuit Rule 30(a) and (b).

s/Murray Kamionski
Murray Kamionski
HALE LAW LLC
53 W. Jackson Boulevard
Suite 334
Chicago, IL 60604
818-609-1795

AO 245D   (Rev. 12/03) Judgment in a Criminal Case for Revocations
Sheet 1

# UNITED STATES DISTRICT COURT

Central _____ District of _____ Illinois

UNITED STATES OF AMERICA
**V.**

TODD JONES

**JUDGMENT IN A CRIMINAL CASE**
(For **Revocation** of Probation or Supervised Release)

Case Number:  07-10023-001
USM Number:  13578-026

Karl Bryning
Defendant's Attorney

FILED
DEC 3 2013
CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## THE DEFENDANT:

☑ admitted guilt to violation of condition(s)   MC, ST 2   of the term of supervision.

☐ was found in violation of condition(s) _____ after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| 1D | Law Violation: Possession of Marijuana | 8/14/2013 |
| 2A | Failure to Report to US Probation Office | 12/28/2012 |
| 2B | Failure to Submit Monthly Report Forms | 8/5/2013 |

The defendant is sentenced as provided in pages 2 through ___4___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☑ The defendant has not violated condition(s)  MC (1A, 1B, 1C)  and is discharged as to such violation(s) condition.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

Last Four Digits of Defendant's Soc. Sec. No.:   4333

Defendant's Year of Birth:   1983

City and State of Defendant's Residence:

Galesburg, Illinois

11/26/2013
Date of Imposition of Judgment

s/ Michael M. Mihm

Signature of Judge

Michael M. Mihm
Name of Judge

U.S. District Judge
Title of Judge

12/3/13
Date

AO 245D    (Rev. 12/03 Judgment in a Criminal Case for Revocations
Sheet 2— Imprisonment

DEFENDANT: TODD JONES

CASE NUMBER: 07-10023-001

Judgment — Page   2   of   4

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of :

4 months

☑ The court makes the following recommendations to the Bureau of Prisons:

It is recommended that the defendant serve his sentence as close to his family in Peoria, Il, as possible, specifically FCI Pekin Camp.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m.  on _____ .

    ☐ as notified by the United States Marshal.

☑ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☑ before 2 p.m. on   2/11/2014 _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245D   (Rev. 12/03) Judgment in a Criminal Case for Revocations
Sheet 3 — Supervised Release

|  | Judgment—Page | 3 | of | 4 |

DEFENDANT:  TODD JONES
CASE NUMBER: 07-10023-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

36 months

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable.)

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  (Check, if applicable.)

☑ The defendant shall cooperate in the collection of DNA as directed by the probation officer.  (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.  (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence.  (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from ☐ excessive ☒ any use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245D    (Rev. 12/03) Judgment in a Criminal Case for Revocations
           Sheet 3C — Supervised Release

DEFENDANT:  TODD JONES
CASE NUMBER:  07-10023-001

Judgment—Page ___4___ of ___4___

## SPECIAL CONDITIONS OF SUPERVISION

1. You shall, at the direction of the probation officer, participate in and successfully complete a cognitive based therapy (CBT) program as approved by the probation officer.  You shall pay for this service as directed by the probation office.

2. You shall refrain from any use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or mood altering substance, or any paraphernalia related to any controlled substance or mood altering substance, except as prescribed by a physician. You shall, at the direction of the probation officer, participate in a program for substance abuse treatment including not more than six tests per month to determine whether you have used controlled substances and or alcohol. You shall pay for these services as directed by the probation office.

3. If you are unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or layoff from employment, you shall perform at least 20 hours of community service work per week at the direction of the U.S. Probation Office until gainfully employed.

```
 1                 UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF ILLINOIS
 2

 3

 4   UNITED STATES OF AMERICA,    )
                                  )
 5             Plaintiff,         )
                                  )   Criminal No. 07-10023
 6        vs.                     )   Peoria, Illinois
                                  )
 7   TODD JONES,                  )
                                  )
 8             Defendant.         )

 9
                       RECORD OF PROCEEDINGS
10       HEARING ON REVOCATION OF SUPERVISED RELEASE
                       NOVEMBER 26, 2013
11
                            BEFORE:
12            THE HONORABLE MICHAEL M. MIHM,
               United States District Judge
13

14   APPEARANCES:

15   For the Government:      GREGGORY R. WALTERS, ESQUIRE
                              Asst. United States Attorney
16                            211 Fulton Street, Suite 400
                              Peoria, Illinois 61602
17                            (309) 671-7050

18
     For the Defendant:       KARL W. BRYNING, ESQUIRE
19                            Federal Public Defender
                              401 Main Street, Suite 1500
20                            Peoria, Illinois 61602
                              (309) 671-7891
21

22

23          Jennifer E. Johnson, CSR, RMR, CRR
               U.S. District Court Reporter
24              Central District of Illinois

25   Proceedings recorded by mechanical stenography;
     transcript produced by computer
```

1      (Proceedings held in open court.)

2      THE COURT:  All right.  This is the case of

3   the *United States of America vs. Todd Jones.*  The

4   defendant's in court represented by his attorney,

5   Karl Bryning.  The United States is represented by

6   Gregg Walters.  And this is a hearing on the

7   revocation of supervised release.

8      What's the status?

9      MR. BRYNING:  Judge, I had spoken with --

10     THE COURT:  I'm sorry; I can't hear you.

11     MR. BRYNING:  Judge, I had spoken with the

12  probation officer on the case, Mr. Walsh.  It was

13  my understanding today that Mr. Jones would be

14  admitting to violation number 1D and 2A and B.

15     THE COURT:  Okay.  And, Mr. Walters, you're in

16  agreement that if he does that, you'll withdraw the

17  other charges?

18     MR. WALTERS:  Yes, Your Honor.

19     THE COURT:  Okay.  Is there any agreement

20  about what his sentence would be if he does plead

21  guilty?

22     MR. WALTERS:  No, Your Honor.

23     MR. BRYNING:  No, Judge.

24     THE COURT:  Okay.  All right.  Very good.

25     Mr. Bryning, would you approach the podium

1  with your client, please?

2      Mr. Jones, this process of tendering a plea of

3  guilty to certain charges in the petition will

4  involve your answering a number of questions put to

5  you while you're under oath, so please raise your

6  right hand and be sworn.

7      **(Defendant sworn by the clerk.)**

8      THE COURT:  Now that you have been sworn, do

9  you understand that your answers to my questions

10 are subject to the penalties of perjury or of

11 making a false statement if you don't answer

12 truthfully?

13     THE DEFENDANT:  Yes.

14                    **EXAMINATION**

15 BY THE COURT:

16 Q.  What is your full name, sir?

17 A.  Todd Curtis Jones, Jr.

18 Q.  I can't understand what you're saying.

19 A.  Todd Curtis Jones, Jr.

20 Q.  Okay.  How old are you?

21 A.  30.

22 Q.  How far did you go in school?

23 A.  I finished -- I got a high school diploma.  I

24 have a welding degree.  I have a carpentry degree.

25 Q.  Great.  Have you been treated recently for any

1  mental illness or addiction to narcotic drugs?

2  A.   Been treated for what?

3  Q.   Have you been treated recently for mental

4  illness or addiction to narcotic drugs?

5  A.   No.

6  Q.   Are you currently under the influence of any

7  drug, medication or alcoholic beverage?

8  A.   No, sir.

9  Q.   Have you seen this petition and discussed it

10  with your attorney?

11  A.   Yes, sir.

12  Q.   Okay.  Are you fully satisfied with the

13  counsel, representation and advice given to you in

14  this case by Mr. Bryning?

15  A.   Yes, sir.

16  Q.   Now, as I understand it, there is an agreement

17  that you would plead guilty to paragraph 1D -- as

18  in David -- of the petition charging possession and

19  use of marijuana on August 14th, 2013, and also

20  paragraphs 2A and 2B, failure to report as required

21  on December 28th of 2012 and on May 5th, June 5th,

22  July 5th and August 5th of 2013.  If you do plead

23  guilty to those charges, then the government will

24  dismiss the claimed violations set out in

25  paragraphs 1A, B and C.

1    Is that your understanding of the agreement?

2  A.   Yes, sir.

3  Q.   Am I correct that if you plead guilty, there

4  is no agreement as to what your sentence would be?

5  Is that correct?

6    You don't have an agreement with the

7  government as to what your sentence would be?

8  A.   No, we haven't made any.

9  Q.   Okay.  Has anyone made any promises or

10  assurances other than what I've mentioned here in

11  an effort to induce you to plead guilty?

12  A.   No, sir.

13  Q.   Has anyone attempted in any way to force you

14  to plead guilty?

15  A.   No, sir.

16  Q.   Are you pleading guilty of your own free will

17  because you are guilty?

18  A.   Yes, sir.

19  Q.   So, the -- let's see.

20    I must have left my presentence report on my

21  desk.  Would you bring it out, please?

22    Let's see.  There's a five-year statutory

23  maximum in terms of the penalties you're facing.

24  The guideline range for this situation -- it's a

25  Grade B violation, Criminal History Category I.

1    There's a guideline range of four to ten months,

2    and supervised release up to life minus any term of

3    imprisonment imposed on revocation.

4        Do you understand the penalties that you're

5    facing if you plead guilty?

6    A.  Yes, sir.

7    Q.  Do you understand that you have a right to

8    plead not guilty to any offense charged against you

9    and to persist in that plea?  You would then have

10   the right to a hearing in front of a judge.  At

11   that hearing, you would be presumed to be innocent;

12   the government would have to prove your guilt by a

13   preponderance of the evidence.

14       At that hearing, you would have the right to

15   the assistance of counsel for your defense, the

16   right to see and hear the witnesses and have them

17   cross-examined in your defense, the right on your

18   own part to decline to testify unless you

19   voluntarily elected to do so in your own defense,

20   and the right to compel the attendance of witnesses

21   to testify in your defense.

22       Do you understand those rights?

23   A.  Yes, sir.

24   Q.  Do you understand that at such a hearing,

25   should you decide not to testify or not to put on

1  any evidence, those decisions cannot be used
2  against you?  Do you understand?
3  A.  Yes, sir.
4  Q.  Do you further understand that by entering a
5  plea of guilty, if that plea is accepted by the
6  Court, there will be no trial -- no such hearing, I
7  mean, and you will have waived or given up your
8  right to a hearing as well as those other rights
9  associated with a hearing as I just described them?
10      Do you understand?
11  A.  Yes, sir.
12  Q.  So, paragraph 1D charges that on about -- on
13  or about August 14th of this year you possessed and
14  used marijuana by -- as determined by a
15  non-instrumented testing technology.  Urine
16  specimen tested positive for THC.  Let's see.
17      So, you understand what you're charged with in
18  this paragraph?
19  A.  Yes, sir.
20  Q.  Going back to August 14th of this year, did
21  you use -- possess and use marijuana on or about
22  that date?
23  A.  Yes, sir.
24  Q.  How did you do that?  Did you smoke it or --
25  A.  I smoked it.

1  Q.  At the time, did you understand that it was

2  marijuana?

3  A.  Yes, sir.

4  Q.  You knew you were prohibited from doing that.

5  Is that correct?

6  A.  Yes, sir.

7  Q.  How do you now plead to the charges contained

8  in 1D:  Guilty or not guilty?

9      MR. BRYNING:  May I have a moment, Your Honor?

10      THE COURT:  Okay.

11      (A pause was had in the record.)

12      MR. BRYNING:  Thank you, Your Honor.

13      THE COURT:  Okay.

14  BY THE COURT:

15  Q.  How do you now plead to the charges contained

16  in paragraph 1D:  Guilty or not guilty?

17  A.  Guilty.

18  Q.  Okay.  And now I'm looking at paragraph two,

19  standard condition two.

20      Let me back up for a minute.  What I just

21  finished talking to you about concerning paragraph

22  1D, about possession and use of marijuana, there

23  was a condition of your supervised release that you

24  not violate -- that you not commit another federal,

25  state or local crime.  So, that's what you're

1    charged with in 1D, is committing a new violation.

2         Do you understand that?

3    A.   Yes, sir.

4    Q.   And then in paragraph two, standard condition

5    two, you had a duty to report to the probation

6    officer and submit a truthful and complete written

7    report within the first five days of each month.

8         Paragraph A claims that on December 28th you

9    failed to report as directed.  Do you understand

10   that's what you're charged with in paragraph 2A?

11   A.   Yes, sir.

12   Q.   Is that an accurate statement of what

13   happened?

14   A.   Yes, sir.

15   Q.   You did not file a report at that time?

16   A.   Yes, sir.

17   Q.   You knew you had a duty to do that?

18   A.   Yes, sir.

19   Q.   Okay.  How do you now plead to that charge:

20   Guilty or not guilty?

21   A.   Guilty.

22   Q.   And then paragraph 2B charges that on certain

23   dates -- May 5th, June 5th, July 5th and August 5th

24   of this year -- you failed to submit monthly

25   supervision reports for April, May, June and July.

1   It says the report forms were submitted in August.

2       Is that correct, that you failed to file those

3   reports when they were supposed to be filed?

4   A.   Yes, sir.

5   Q.   You understood you had a duty to do that?

6   A.   Yes, sir.

7   Q.   Okay.  How do you now plead to the charges

8   contained in 2B:  Guilty or not guilty?

9   A.   Guilty.

10      THE COURT:  It is the finding of the Court in

11  the case of the *United States of America vs. Todd*

12  *Jones* that the defendant is fully competent and

13  capable of entering an informed plea, that he is

14  aware of the nature of the charges and the

15  consequences of the plea, and that his pleas of

16  guilty are knowing and voluntary pleas.  His pleas

17  are therefore accepted, and he is now adjudged

18  guilty of violating his supervised release as

19  charged in paragraph 1D and paragraphs 2A and 2B.

20      In anticipation of today's hearing, the Court

21  asked the probation office to prepare an updated

22  presentence report.  That was done; copies were

23  made available to everyone, including the

24  defendant.

25      Mr. Walters, have you had a reasonable

1    opportunity to read this and review it with your
2    client?
3         MR. WALTERS:  Yes, Your Honor.
4         THE COURT:  Based on your reading and review,
5    is there anything in the report you feel is
6    inaccurate or incomplete that you wish to
7    challenge?
8         MR. WALTERS:  No, Your Honor.
9         THE COURT:  Mr. Bryning, have you had a
10   reasonable opportunity to read this report and
11   review it with your client?
12        MR. BRYNING:  Yes, Judge, I have.
13        THE COURT:  Based on your reading and review,
14   is there anything in the report you feel is
15   inaccurate or incomplete that you wish to
16   challenge?
17        MR. BRYNING:  No, Your Honor.
18        THE COURT:  Mr. Jones, have you had a
19   reasonable opportunity to read this report and
20   review it with your attorney?
21        THE DEFENDANT:  Yes, sir.
22        THE COURT:  Based on your reading and review,
23   is there anything in the report you feel is
24   inaccurate or incomplete that you wish to
25   challenge?

1       THE DEFENDANT:  No, sir.

2       THE COURT:  You understand you have the

3  opportunity to present evidence in mitigation here

4  this afternoon.  You also have the right to make a

5  statement to the Court on your own behalf prior to

6  the time that the Court imposes sentence.

7       Do you understand?

8       THE DEFENDANT:  Yes, sir.

9       THE COURT:  Thank you.

10      Mr. Walters, I may have already asked:  Is

11  there anything in report you feel is inaccurate?

12      MR. WALTERS:  No, Your Honor.

13      THE COURT:  Do you have any additional

14  evidence?

15      MR. WALTERS:  I have no evidence.

16      THE COURT:  Mr. Bryning?

17      MR. BRYNING:  Nothing, Judge.

18      THE COURT:  Okay.  So, the sentencing profile

19  is a Grade B violation, Criminal History

20  Category I.  There's a custody range guideline four

21  to ten months, a supervised release guideline up to

22  life minus any term of imprisonment imposed on

23  revocation.

24      Mr. Walters?

25      MR. WALTERS:  Your Honor, we're asking for a

1    sentence within the guideline range.  And as I read

2    through this violation report, compared to others

3    I've read, certainly this may seem or it does

4    appear comparatively to be not as serious conduct

5    when you look at a marijuana violation, smoking it,

6    and failure to report to a probation officer, and

7    then failure to submit reports.

8         But as I read through this -- and I'm not

9    trying to read between the lines.  What we do have

10   is a person who's on supervised release; he's

11   supposed to go by certain conditions.  And at some

12   point he's made a decision that "I want to do it my

13   way," and so he's become a project for Mr. Walsh

14   who, I think, from reading this violation report,

15   has been patient, has been working with him, has

16   sought out non-action by the Court on prior

17   occasions, helping obtain some type of bankable or

18   workable type training through welding.

19        And yet you have a defendant -- I think what

20   sticks out most to me is when he said he didn't

21   want the probation officer, quote, riding him.

22   Respectfully, he's --

23        THE COURT:  I'm sorry, say that again.

24        MR. WALTERS:  He didn't want the probation

25   officer, quote, to ride him.

1    THE COURT:  Oh.

2    MR. WALTERS:  Respectfully, it looks like

3 Kerry Walsh was in a position to have to ride him,

4 not by choice but because it's his job.  And you

5 have a defendant who's not complying with

6 submitting to the authority over him by reporting.

7    And even if we look at -- he's had a number of

8 drops that weren't dirty.  I think tested a total

9 of 77 times; 53 times he was on time.  Out of the

10 remaining 24, though, you've got either a period of

11 days or up to ten days where he finally would show

12 up to do his drops.  And so what he has turned into

13 for Probation is a project because of his lack of

14 compliance.

15    And so we're asking, for that reason, for a

16 sentence within the guideline range.

17    And then I believe Mr. Walsh has asked for an

18 additional period of three years supervised release

19 to be imposed on the defendant upon release from

20 any custody.

21    Thank you, Your Honor.

22    THE COURT:  All right.  Thank you.

23    Mr. Bryning?

24    MR. BRYNING:  Your Honor, one of the

25 challenges with any indigent defendant is housing,

1  and I think one of the biggest problems here was

2  the fact that for a time Mr. Jones did not have a

3  stable place to live.  He does now.

4      THE COURT:  Well, am I correct that, in fact,

5  he didn't tell Probation that he was not living

6  where he supposedly lived?

7      MR. BRYNING:  He was afraid that he was going

8  to be referred to a homeless shelter --

9      THE COURT:  I understand that, but --

10     MR. BRYNING:  -- a place he didn't want to go.

11     THE COURT:  -- can you answer my question?

12     THE DEFENDANT:  Excuse me?

13     THE COURT:  Is it correct that he was not

14 found to be living where Probation believed he was

15 living?

16     THE DEFENDANT:  Well, he came and he had to --

17 he had the address mixed up.  He had admitted to me

18 that he had the address mixed up.

19     THE COURT:  So, one of the addresses he had

20 was right?

21     THE DEFENDANT:  Yes.  One of the addresses,

22 when he went back and had the opportunity, he saw

23 that the address was correct.

24     THE COURT:  I'm sorry.  Go ahead.

25     MR. BRYNING:  He does have a place to live

1   now.  I would note that since he's been released on
2   bond, there have been no violations.

3       There were also a couple of other things going
4   on in Mr. Jones' life.  One is a serious back
5   injury for which he required surgery.  He's still
6   in the process of recovering from that.

7       But some of the things that he's done are
8   good.  He did complete a welding program; he
9   graduated from that program.  He went in for an
10  evaluation; he was not diagnosed with any substance
11  abuse or dependency conditions.

12      Mr. Walters correctly notes that he was tested
13  many, many times.  Has he been perfect in that?
14  No, he has not, and he's admitted that today.  But
15  he did complete that program.  He completed another
16  program, a Cognitive Behavioral Therapy program.

17      There has been a rough start.  There have been
18  problems, but they've been relatively minor
19  problems.  Any violation of supervised release is
20  serious, but in this situation, I think the
21  guidelines reflect that these are relatively minor
22  violations -- failure to file reports, one positive
23  drop or two positive drops over a period of time.
24  He's been on supervised release for many months.
25      THE DEFENDANT:  40 months.

1    MR. BRYNING:  41 months.  So, I would ask you

2  to take that into consideration as well, Your

3  Honor.

4      The fact is now Mr. Jones has an apartment of

5  his own.  He's recovering from his back surgery.

6  And he hopes to find a job.  He has the tools to do

7  that because he has the certificate from welding as

8  well as other certificates.  The problem is some of

9  the jobs that he's qualified for because of that

10  certificate are going to require heavy lifting that

11  he cannot do with the back injury.  So, he's been

12  looking for jobs that he can do and submitting

13  drops whenever asked to do so.

14      THE COURT:  Okay.  Thank you.

15      MR. BRYNING:  Judge, what we're requesting is

16  -- and I know you can order this because not only

17  is it a violation petition but also because he's in

18  the zone where it would be appropriate for home

19  confinement.  I think home confinement in this

20  situation would be appropriate because there is now

21  a stable residence that he has that he could be

22  confined to.  Electronic monitoring can be put in

23  place, and he can continue to look for a job and

24  participate in physical rehabilitation.

25      To order him into jail or to prison at this

1  point, Your Honor, would really defeat the purpose,

2  which is to have stable housing, to get on the

3  right track, and to be able to comply with all the

4  conditions of supervision which he has been doing

5  since he was released on bond.

6      So, that's our request, Your Honor, that a

7  sentence -- whatever sentence you impose be a

8  sentence of home confinement for that period.

9      Thank you.

10     THE COURT:  Thank you.

11     What's the government's position on home

12  confinement here?

13     MR. WALTERS:  We're asking for a sentence of

14  imprisonment within the range, but I understand the

15  Court's discretion and would respect it.

16     I would note that his stable home environment

17  of which Mr. Bryning does accurately speak happened

18  to arise after he was arrested and wanted released

19  on bond.

20     THE COURT:  Okay.  Thank you.

21     Well, the Court adopts the factual findings

22  and guideline application as contained in the

23  presentence report.

24     It looks to me from reading this that we did

25  not have the defendant's full attention, especially

1    after he got his welding degree.  And then going

2    for months without filing a report indicates again,

3    I think, what his attitude is here, so --

4        MR. BRYNING:  Your Honor?

5        THE COURT:  Oh, I'm sorry.

6        Is there anything you'd like to say before I

7    impose sentence?

8        THE DEFENDANT:  Yes, I would like to say that

9    I have made mistakes, and I have learned from them.

10   And I didn't turn in my monthly reports, and I'm

11   pleading guilty to that.

12       In consideration, prior to my arrest for my

13   violation, I did have a place to stay, like a

14   couple weeks before.  I turned it in to Kerry, and

15   he told me I had to come before the judge.  I also

16   have worked jobs.  And now that I have a stable

17   place where I can turn in my monthly reports ever

18   since I've been staying there, they've been in on

19   time.  I haven't been in no trouble or anything at

20   all, you know.

21       And I ask if I do go to prison, can I get an

22   extension to at least get the stuff out of my house

23   that I have -- I worked hard to put in there.  To

24   at least give me time to get those things, get it

25   arranged.

1    THE COURT:  Well, I don't expect the defendant

2  to answer this, but my understanding is when

3  someone's on supervised release and they have

4  problems with their housing, isn't that one of the

5  reasons that you might want to confer with your

6  probation officer, to seek some assistance?  Isn't

7  that what -- let me ask Probation, is that the kind

8  of thing that --

9    PROBATION:  Absolutely, Your Honor.  One of

10  the conditions is that they're supposed to notify

11  Probation ten days in advance of moving, and that

12  way we can start to look into any problems or how

13  we can help with any type of resources.

14    THE COURT:  All right.  Taking all of this

15  into consideration, I believe that the bottom of

16  the guideline range is the proper place; that's

17  four months.  So, I'm going to revoke your

18  supervised release.  I'm going to sentence you to a

19  period of four months in the Bureau of Prisons to

20  be followed by a supervised release term of 36

21  months.

22    And the next time, if there are issues

23  concerning housing or anything else, I would expect

24  you would contact your probation officer first

25  rather than let the situation go for, literally,

1  months.

2      As conditions of supervision, in addition to

3  the standard conditions, you shall participate in

4  and successfully complete a cognitive-based therapy

5  program as approved by Probation.  You shall pay

6  for that as directed.

7      You shall refrain from any use of alcohol and

8  shall not purchase, possess, use, distribute or

9  administer any controlled substance or

10  mood-altering substance or any paraphernalia

11  related to any controlled substance or

12  mood-altering substance except as prescribed by a

13  physician.

14      You shall, at the direction of the probation

15  office, participate in a program for substance

16  abuse treatment, including not more than six tests

17  per month to determine whether you have used

18  controlled substances and/or alcohol.  You shall

19  pay for these services as directed.

20      If you are unemployed after the first 60 days

21  of supervision or if you're unemployed for 30 days

22  after termination or layoff from employment, you

23  shall perform at least 20 hours of community

24  service work per week at the direction of the

25  probation office until gainfully employed.

1    I will recommend to the Bureau of Prisons that

2    you serve your sentence in a facility as close to

3    Peoria as possible.

4    Do you want me to specifically recommend FCI,

5    the camp?

6    Yes?

7    THE DEFENDANT:  I have a question, Your Honor.

8    I was -- I -- from my understanding, I thought if I

9    pled guilty that my, my probation won't be extended

10   for another three years.  I thought that it --

11   maybe I was -- I thought that maybe we came to

12   agreement that it would be cut off or, or, or keep

13   going for three years of probation for the

14   violations that I have.  I thought that I should --

15   THE COURT:  Well, that's something we always

16   think about, but in your case, I think it's

17   necessary to put you back on supervised release.

18   THE DEFENDANT:  For 36 months?  For three more

19   years?

20   THE COURT:  For 36 months.

21   THE DEFENDANT:  I've been on probation for 41

22   months already.

23   THE COURT:  I will only say that if you get

24   into that period of supervision for a year, year

25   and a half and you're still okay, you're not

1  committing violations, then I would consider the

2  possibility of an early discharge.  But as for

3  right now, that's what the sentence is.

4      Do you want me to recommend the camp in Pekin?

5      THE DEFENDANT:  Yes.  Can I also -- is there

6  any way that I can self-surrender to get the stuff

7  out of my house?

8      THE COURT:  Yes, I'll talk about that in a

9  minute.  Actually, I don't know on a four-month

10 sentence -- well, is there any objection to this

11 voluntary surrender?

12     MR. WALTERS:  No, Your Honor.

13     THE COURT:  All right.  I don't have any

14 problem with that.  So, that will give the Bureau

15 of Prisons an opportunity to find out where you're

16 going to be.  And I would think the camp at Pekin

17 would be the right place for you.

18     Do you have a surrender date for me?

19     THE CLERK:  Ten weeks out, correct?

20     THE COURT:  I'm sorry, what?

21     THE CLERK:  Ten weeks out, correct?

22     THE COURT:  Yes, I think that's right.

23     Okay.  You'll walk out of here today, and your

24 surrender date is Tuesday, February 11th before

25 2 p.m.  And once it's determined where you're going

1  to go, you'll be told that.  You need to get there

2  on your own, at your own expense.

3       THE DEFENDANT:  Yes, sir.

4       THE COURT:  If you don't show up when you're

5  supposed to, where you're supposed to, you'll be

6  considered as being on escape status.

7       THE DEFENDANT:  Yes, sir.

8       THE COURT:  Do you understand?

9       THE DEFENDANT:  Yes, sir.

10      THE COURT:  Between now and then, the

11  conditions of bond that have been in place will

12  continue to be in place.

13      You do -- I don't think I gave appeal rights.

14  You do, of course, have the right to file a notice

15  of appeal.

16      Had I given the appeal rights?

17      MR. BRYNING:  No, Judge.

18      THE COURT:  If it is your wish to appeal, I

19  instruct you that any notice of appeal must be

20  filed within 14 days of today's date with the clerk

21  of the court.  As your attorney, Mr. Bryning has an

22  absolute responsibility to file that notice for you

23  if that is your wish.

24      Do you understand?

25      THE DEFENDANT:  Yes, sir.

1       THE COURT:  Okay.  Anything else?

2       MR. WALTERS:  Yes, Your Honor.  The United

3  States moves to dismiss allegations 1A through 1C

4  of the petition.

5       THE COURT:  Okay.  That motion is granted, and

6  those charges are dismissed.

7       Okay.  Thank you.

8       THE CLERK:  Court is in recess.

9       (Proceedings concluded at 1:49 p.m.)

10

11

12                      CERTIFICATE

13

14       I, JENNIFER E. JOHNSON, CSR, RMR, CBC, CRR,
   certify that the foregoing transcript constitutes a
   true and accurate transcript of the original
15  shorthand notes of the proceedings had at the time
   and place aforesaid before the HONORABLE MICHAEL M.
16  MIHM, U.S. District Judge.

17                      s/ Jennifer E. Johnson
                       JENNIFER E. JOHNSON
18                      CSR, RMR, CBC, CRR
                       License #084-003039

19

20

21

22

23

24

25

CD/IL PROB 12C
(Rev. 1/13)

# United States District Court
## for
## CENTRAL DISTRICT OF ILLINOIS

Petition for Warrant or Summons for Offender Under Supervision

| | |
|---|---|
| NAME/ADDRESS OF OFFENDER | Todd Jones |
| CASE NUMBER | 07-10023-001 |
| SENTENCING JUDICIAL OFFICER | Michael M. Mihm<br>U.S. District Judge |
| ORIGINAL SENTENCE DATE | January 18, 2008 |
| ORIGINAL OFFENSE | Conspiracy to Distribute Cocaine Base |
| ORIGINAL SENTENCE | 57 months imprisonment and 5 years supervised release with special conditions: 1) no use of alcohol or drugs and participate in substance abuse testing and treatment as directed; 2) no firearms, ammunition, or dangerous weapons; and 3) participate in job training or employment counseling as directed by probation officer.<br><br>July 24, 2008: Custodial sentence reduced to 46 months as a result of a motion pursuant to 18 U.S.C. § 3582(c) (2). |
| TYPE OF SUPERVISION | Term of Supervised Release |
| DATE SUPERVISION COMMENCED | June 25, 2010<br><br>January 19, 2011:  Special Conditions No. 4 and 5 added.  Special Condition No. 4 required the offender to complete 25 community services hours. Special Condition No. 5 required the offender to complete a cognitive behavioral therapy group.  Modifications based on the offender's commission of the offenses of obstructing a peace officer and driving while license suspended.<br><br>November 12, 2013:   Violation report requesting no action submitted to the Court to allege the criminal conduct in paragraph 1A and 1B below.  Advised Court that offender was going through state court process and recommended waiting for disposition in those cases prior to taking action against offender Jones' term of supervised release.  The Court concurred with the recommendation. |

Re:  JONES, Todd
Page 2

| ASSISTANT U.S. ATTORNEY | Greg Walters |
| --- | --- |
| DEFENSE ATTORNEY | Stuart Goldberg |

## PETITIONING THE COURT

☒     To issue a warrant

☐     To issue a summons

The probation officer believes that the offender has violated the following condition(s) of supervision:

VIOLATION
NUMBER        NATURE OF NONCOMPLIANCE

1.              LAW VIOLATION - RESIST A PEACE OFFICER
                LAW VIOLATION - AGGRAVATED BATTERY
                LAW VIOLATION - RESIST A PEACE OFFICER
                LAW VIOLATION - BATTERY
                LAW VIOATION - POSSESSION OF MARIJUANA

MANDATORY CONDITION:  The defendant shall not commit another federal, state, or local crime.

A.  On February 15, 2012, offender Jones committed the offenses of speeding and resisting a peace officer in East Moline, Illinois.  On that date, offender Jones was stopped for speeding by officers of the East Moline, Illinois, Police Department.  During the stop, offender Jones was uncooperative with police, the offender cursed at officers, and failed to follow the officer's instructions while being arrested by turning to face officers and kicking his legs in a flailing manner after being placed in the police squad car.  Later on February 15, 2012, offender Jones advised that he got mad at the officer who stopped him because he felt the officer treated him with disrespect.  Offender Jones advised that the officer continually told Jones that Jones was still dealing drugs and was going back to prison.  Jones advised he got mad and started cussing at the officer and not complying to show the officer he would not "just take his abuse."  No charges were filed against offender Jones in Rock Island County, Illinois, Circuit Court for resisting a peace officer.  On July 9, 2012, offender Jones pleaded guilty to speeding and was fined $150 and placed on 3 months of court supervision.

B.  On October 13, 2012, offender Jones committed the offenses of Aggravated Battery and Resisting a Peace Officer in Galesburg, Illinois.  On that date, offender Jones was arrested by officers of the Galesburg, Illinois, Police Department for 3 counts of aggravated battery on a public place and resisting a peace officer.  These charges stemmed from a bar fight that occurred at Diamonds Lounge, at approximately 1:30 a.m. on October 13, 2012, wherein offender Jones attempted to hit a male in the head with a beer bottle.  Offender Jones missed the male target and hit a female standing near the intended victim.  A fight ensued between

offender Jones and the two other males.  Police arrived as the fight was starting.  Police found offender Jones and the two males in a foyer of the bar.  All refused to comply with police commands and continued to throw "dozens of punches each" inside the foyer while police interceded.  Offender Jones posted bond that evening.  Offender Jones has been charged in Knox County, Illinois, Circuit Court Case No. 12CF476 with one count of Aggravated Battery and one count of Resisting a Peace Officer.  On April 15, 2013 the State's Attorney filed a statement of Nolle Prosequi Without Prejudice, advising that the complaining witness requested that the prosecution not proceed and that another alleged victim did not appear to testify.

C.  On June 01, 2013, offender Jones committed the offense of Battery in Knox County, Illinois.  On that date at about 3:00 a.m., offender Jones and two others confronted Rayvonne Taylor outside the Broadway Restaurant in Galesburg, Illinois, regarding an incident that occurred earlier in the evening at the West Side Lounge, also in Galesburg.  As Jones' two associates were talking to Taylor, offender Jones stood behind them telling them to "kick his ass" in reference to Taylor.  After several moments of yelling, offender Jones moved around his associates and punched Taylor in the face.  Offender Jones and his associates then fled the scene in a 2012 Toyota Corolla registered to Enterprise Rental Cars.  Police responded to the scene due to a 911 call by a witness.  Police interviewed Taylor, who was familiar with offender Jones and his associates and identified each by name.  A witness advised that the person who struck Taylor was also the driver of the Toyota when it drove away.  Based on the vehicle description, police stopped the Toyota Corolla a few blocks from the restaurant.  Offender Jones was driving the Toyota.  Offender Jones admitted that he and his associates were at the Broadway Restaurant and that his associates were arguing with Taylor.  Offender Jones denied leaving the vehicle at any time and denied striking Taylor.  Offender Jones was arrested for battery.  He was charged with this offense in Knox County, Illinois, Circuit Court Case No. 13CM400.  He subsequently posted bond and was released.  On August 1, 2013, the State's Attorney filed a statement of Nolle Prosequi, advising that the complaining witness specifically requested that the prosecution not proceed and the state agreed to acquiesce to the request.

D.  On or about August 14, 2013, offender Jones possessed and used marijuana as determined by a non-instrumented testing technology.  On that date, a urine specimen provided by the offender tested positive for Tetrahydrocannabinol (THC).  The urine was collected at the United States Probation Office, Rock Island, by U.S. Probation Officer Kerry Walsh and sent to Alere Laboratories, Gretna, Louisiana, for verification of the result.  On August 18, 2013, Alere verified the presence of THC metabolite in the specimen.

2.      FAILURE TO SUBMIT MONTHLY REPORT FORMS

STANDARD CONDITION # 2:  The defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month

A.  On December 28, 2012, offender Jones failed to report to the U.S. Probation Office, Rock Island, Illinois, as directed for an office visit.

Re:  JONES, Todd
Page 4

B.  By May 5, June 5, July 5, and August 5, 2013, offender Jones failed to submit monthly supervision report forms for the months of April, May, June, and July, 2013, respectively. The report forms were submitted on August 14, 2013.  Offender Jones advised that he did not submit forms as directed for those months because he lacked a permanent address and did not want to deal with his probation officer "riding him" to find someplace to live. He further advised that he feared his probation officer would direct him to reside in a homeless shelter, which he did not want to do

U.S. Probation Officer Recommendation:

☒    The term of supervision should be
    ☒    revoked
    ☐    extended for  year, for a total of  years.

☐    The conditions of supervision should be modified as follows:

I declare under penalty of perjury that the foregoing is true and correct.

s/Kerry P. Walsh

U.S. Probation Officer
August 19, 2013

KPW:cdb

THE COURT ORDERS:

☐    No action
☒    The issuance of a warrant
☐    The issuance of a summons
☐    Other:  _____

s/:  Michael M. Mihm
Michael M. Mihm
U.S. District Judge
Date:   8/23/2013